IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re: JEREMY A. BRAY | ) | Case No.: 18-82940-12-CRJ |
| | ) | |
| | ) | |
| SSN: xxx-xx-8166 | ) | |
| | ) | |
| Debtor. | ) | CHAPTER 12 |
| | ) | |

# DEBTOR'S PLAN OF REORGANIZATION
## DATED DECEMBER 21, 2018

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL  35804
Tel: (256) 512-9924
Fax: (256) 512-9837

**Attorneys for Debtor**

**Dated: December 21, 2018**

1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: JEREMY A. BRAY | ) | Case No.: 18-82940-12-CRJ |
| | ) | |
| | ) | |
| SSN: xxx-xx-8166 | ) | |
| | ) | |
| Debtor. | ) | CHAPTER 12 |
| | ) | |

## DEBTOR'S PLAN OF REORGANIZATION

Jeremy A. Bray (the "Debtor"), propose this Plan of Reorganization (the "Plan") pursuant to section 1221 of Title 11 of the United States Code for the resolution of the Debtor's outstanding creditor claims and equity interests.

## ARTICLE 1
## DEFINITIONS

As used herein, the following terms have the respective meanings specified below, and such meanings shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder" and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any capitalized term used but not defined herein shall have the meaning ascribed to such term in the Bankruptcy Code. In addition to such other terms as are defined in other sections of the Plan, the following capitalized terms have the following meanings when used in the Plan.

1.1 "Administrative Claim" means a Claim for costs and expenses of administration allowed under section 503(b) of the Bankruptcy Code and referred to in section 507(a)(1) of the Bankruptcy Code.

1.2 "Allowed Claim" means a Claim that is (a) not a Disputed Claim or (b) a Claim that has been allowed by a Final Order.

1.3 "Bankruptcy Code" or "Code" means Title 11 of the United States Code as now in effect or hereafter amended.

1.4 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, which presides over this proceeding, or if necessary, the United States District Court for said District having original jurisdiction over this case.

1.5 "Bankruptcy Rules" means, collectively (a) the Federal Rules of Bankruptcy Procedure, and (b) the local rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case.

1.6 "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.7 "Cash" means cash, wire transfer, certified check, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, and commercial paper of any Person, including interests accrued or earned thereon, or a check from the Debtor.

1.8 "Claim" means any right to payment from the Debtor arising before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor prior to the Confirmation Date, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, contested, uncontested, secured or unsecured.

1.9 "Class" means one of the classes of Claims or Interests defined in Article III hereof.

1.10 "Confirmation" means the entry of a Confirmation Order confirming this Plan at or after a hearing pursuant to section 1225 of the Bankruptcy Code.

1.11 "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.12 "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1225 of the Bankruptcy Code.

1.13 "Debtor" means Jeremy A. Bray.

1.14 "Disputed Claim" means a Claim as to which a proof of claim has been Filed or deemed Filed under applicable law, as to which an objection has been or may be timely Filed and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered a Disputed Claim to the extent that: (i) the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in his respective Schedules to the extent of such excess; (ii) any corresponding Claim listed by the Debtor in his respective Schedules has been scheduled as disputed, contingent, or unliquidated, irrespective of the amount scheduled; or (iii) no

corresponding Claim has been listed by the Debtor in his respective Schedules. Disputed Claims also includes Claims subject to a pending action for equitable subordination of such Claims.

  1.15 "Distributions" means the properties or interests in property to be paid or distributed hereunder to the holders of Allowed Claims.

  1.16 "Docket" means the docket in the Reorganization Case maintained by the Clerk.

  1.17 "Effective Date" means the twentieth (20th) business day after an Order confirming this Plan becomes final and no longer open for appeal, stay or reconsideration in accordance with the Federal Rules of Bankruptcy Procedure and/or the Federal Rules of Appellate Procedure or the first business day of the next calendar month, whichever is later.

  1.18 "Estate" means the estate created in this Reorganization Case under section 541 of the Bankruptcy Code.

  1.19 "Executory Contract" means any unexpired lease and/or executory contract as set forth in section 365 of the Code.

  1.20 "File" or "Filed" means filed with the Bankruptcy Court in the Reorganization Case.

  1.21 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the Docket in the Reorganization Case, which has not been reversed, stayed, modified or amended.

  1.22 "Order" means an order or judgment of the Bankruptcy Court as entered on the Docket.

  1.23 "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, indenture trustee, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code).

  1.24 "Petition Date" means October 2, 2018 the date on which Debtor filed his voluntary Chapter 12 petition.

  1.25 "Plan" means this Plan of Reorganization in its present form, or as it may be amended, modified, and/or supplemented from time to time in accordance with the Bankruptcy Code, or by agreement of all affected parties, or by order of the Bankruptcy Court, as the case may be.

  1.26 "Pre-Petition Tax Claim" means a Tax Claim that arises prior to the Petition Date.

  1.27 "Priority Claim" means all Claims entitled to priority under 11 U.S.C. §§ 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Tax Claim.

  1.28 "Pro Rata" means proportionately, based on the percentage of the distribution made on account of a particular Allowed Claim bears to the distributions made on account of all Allowed Claims of the Class in which the Allowed Claim is included.

4

Case 18-82940-CRJ12 Doc 38 Filed 12/21/18 Entered 12/21/18 12:01:34 Desc Main
Document Page 4 of 12

1.29 "Rejection Claim" means a Claim resulting from the rejection of a lease or executory contract by the Debtor.

1.30 "Schedules" means the Schedules of Assets and Liabilities, Statement of Financial Affairs and Statement of Executory Contracts that may be filed by the Debtor with the Bankruptcy Court, as amended or supplemented on or before the Confirmation Date, listing the liabilities and assets of the Debtor.

1.31 "Secured Claim" means any Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.32 "Security Agreement" means the documentation under which a lien against property is reflected.

1.33 "Tax Claim" means either (a) an Unsecured Allowed Claim of a governmental entity as provided by section 507(a)(8) of the Code, or (b) an Allowed Claim of a governmental entity secured by a lien on property of the Debtor under applicable state law.

1.34 "Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, Pre-Petition Tax Claim or Secured Claim.

# ARTICLE 2
# TREATMENT OF
# ADMINISTRATIVE EXPENSE CLAIMS
# AND PRIORITY TAX CLAIMS

2.1 Administrative Expense Claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Debtor obligated for the payment of such Allowed Administrative Expense Claim in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2   Professional Compensation and Reimbursement Claims.

Other than a professional retained by the Debtor pursuant to the Ordinary Course Professional Order, any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtor through and including the Effective Date under Section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in Cash in the amounts Allowed upon (i) the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim. The Debtor is authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtor after the Effective Date in the ordinary course and without Bankruptcy Court approval.

# ARTICLE 3
# DESIGNATION OF
# CLAIMS AND INTERESTS

3.1   The following is a designation of the classes of Claims and Interests under this Plan. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other class or classes. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim or Interest which is not an Allowed Claim or Interest is not in any Class. Notwithstanding anything to the contrary contained in this Plan, no distribution shall be made on account of any Claim or Interest that is not an Allowed Claim.

| Class | | Treatment |
|---|---|---|
| Class 1 – Secured Claim (USDA) | No Claim Filed to date (estimated at $205,000.00) | Within 180 days of the Effective Date, or 120 days after USDA files an allowed proof of claim in this case, whichever occurs later (the "Deadline"), the Debtor will file a motion pursuant to 11 U.S.C. §§ 363 & 1206 to sell a sufficient portion of his farm homestead property to pay off this creditor's allowed secured claim in full. The Debtor or the Debtor's closing agent will directly make this payment to the creditor.<br><br>Should the Debtor fail to satisfy this creditor's allowed secured claim by the Deadline, then, in accord with the notice provisions contained in this Plan, the Automatic Stay in place, as it applies to USDA, will be lifted without further order of the Bankruptcy Court. |

| Class 2 – General Unsecured Claims (including open accounts and credit cards) | Claims # 1-1, 2-1, 3-1, & 4-1 ($27,752.49 in claims in this class) | Debtor will make monthly payments of $100.00 to the Trustee directly for a period of 36 months. Trustee will process each payment received and then make monthly pro-rata distributions of available funds to the creditors in this class. After completed his 36th monthly payment, the Debtor's obligations to the creditors in this class will be discharged. |
|---|---|---|

## ARTICLE 4
## PAYMENTS TO THE TRUSTEE

4.1 The Debtor will make monthly payments of $100.00 to the Trustee directly for a period of 36 months. The Trustee will be entitled to a 5.00% commission on each monthly payment to be collected out of the funds received. Upon receipt and processing of these funds, the Trustee will then timely pay the remaining available funds to all administrative claims on their pro-rata share of the total claims in this class. Upon satisfaction of all administrative claims, the Trustee will then timely pay the remaining available funds to the allowed priority and non-priority unsecured creditors on their pro-rata share of the total claims in this class.

4.2 The Debtor has scheduled a Syngenta corn class-action lawsuit claim as an asset of his estate valued at an estimate of $50,000.00 (the "Settlement Proceeds"). The Debtor believes that his estate will be paid the Settlement Proceeds in late Spring 2019. After this Court approves any settlement, the Settlement Proceeds will be paid to the Chapter 12 Trustee, who will pay the Debtor his exemption amount, pay all administrative claims in the case along with priority or non-priority creditor claims, and return any excess Settlement Proceeds to the Debtor. The Trustee will be entitled to a 5.00% commission on all Settlement Proceeds received and processed by the Trustee's office.

## ARTICLE 5
## DISCHARGE OF INDEBTEDNESS

5.1 Upon completion of the Debtor's 36th monthly payment to the Chapter 12 Trustee, or early satisfaction of all allowed claims, the Debtor will receive a discharge pursuant to 11 U.S.C. § 1228.

## ARTICLE 6
## MEANS FOR EXECUTION AND IMPLEMENTATION
## OF THE PLAN

6.1 Funding of the Distribution. On the Effective Date, the Debtor shall first fund payments to the holders of Allowed Administrative Claims.

6.2 Authorization to Take Necessary and Appropriate Actions to Effectuate Plan. On the Effective Date, the Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan.

# ARTICLE 7
# FUNDING AND METHODS OF DISTRIBUTION AND
# PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

7.1     The Debtor's normal cash flow and the Settlement Proceeds, as defined above, will be the source of funds for the payments to creditors authorized by the U.S. Bankruptcy Court's confirmation of this Plan.

7.2     To the extent the estate receives proceeds from the outcome of any pending lawsuits, such net funds will be paid to the Chapter 12 Trustee in an amount necessary to satisfy all remaining unpaid administrative and unsecured claims. Any excess proceeds will be returned to the Debtor.

# ARTICLE 8
# CONTINUING STAY ON ALL COLLECTIONS
# DURING PENDANCY OF PLAN;
# NOTICE OF DEFAULT AND OPPORTUNITY TO CURE

8.1     So long as the Debtor's Chapter 12 case is not dismissed, the protections afforded to him by 11 U.S.C. §§ 362 & 1201 will remain in full effect to stay all collection actions of any pre-petition debts, claims, liens, or other related occurrences against the Debtor, the bankruptcy estate, or property of the bankruptcy estate for the pendency of his Chapter 12 Plan.

**8.2     During the pendency of this Plan, should any party-in-interest aver that the Debtor has materially defaulted to any of his obligations under this Plan, such party must give written notice of the default to the Debtor and the Debtor's Counsel in Section 10.11, below. The Debtor will have 21 days from receipt of the notice to cure any such default. If the Debtor fails to cure within this 21-day deadline, the party giving notice of the default may proceed accordingly with any legal rights available under applicable law.**

# ARTICLE 9
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Reorganization Case after the Effective Date as is legally permissible, including, without limitation, jurisdiction to:

9.1     Allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim or Indenture Trustee expenses and the resolution of any and all objections to the allowance or priority of Claims or Interests;

9.2     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

9.3 Resolve any motions pending on the Effective Date to assume, assign or reject any executory contract or unexpired lease to which the Debtor are a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising there from;

9.4 Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

9.5 Decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

9.6 Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.7 Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan, including the provisions of Article 9 hereof;

9.8 Modify the Plan before or after the Effective Date, or to modify any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court Order, the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.9 Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

9.10 Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

9.11 Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

9.12 Enter an order concluding the Reorganization Case.

If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Reorganization Case, including, without limitation, the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE 10
# MISCELLANEOUS PROVISIONS

10.1  Fractional Dollars. Any other provision of the Plan notwithstanding, no payments of fractions of dollars will be made to any holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

10.2  Modification of Plan. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

10.3  Withdrawal of Plan. The Debtor reserve the right, at any time prior to entry of the Confirmation Order, to revoke or withdraw the Plan. If the Debtor revoke or withdraws the Plan, then the Plan shall be deemed null and void. In that event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

10.4  Governing Law. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Alabama, without giving effect to the principles of conflicts of law thereof.

10.5  Time. In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eight days, intermediate days that are not Business Days shall be excluded in the computation.

10.6  Payment Dates. Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day.

10.7  Headings. The headings used in this Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan.

10.8  Successors and Assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

10.9    Severability of Plan Provisions. If prior to Confirmation any term or provision of the Plan, which does not govern the treatment of Claims or Interests or the conditions of the Effective Date, is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.10    No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any Claims classification.

10.11    Notices. Notices to be provided under this Plan shall be transmitted to the Debtor by service to both of the following addresses:

Jeremy A. Bray
c/o His Attorneys
**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL  35804

and

Jeremy A. Bray
8080 County Road 52
Spruce Pine, AL 35585

Summited this the 21st day of December, 2018.

/s/ *Jeremy A. Bray*
Jeremy A. Bray, Chapter 12 Debtor


/s/ *Tazewell T. Shepard IV*
Tazewell T. Shepard IV


Of Counsel:

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
Fax: (256) 512-9837


## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing document upon all addressees on the Clerk's Mailing Matrix in this case and Richard M. Blythe, Office of the Bankruptcy Administrator, P.O. Box 3045, Decatur, AL 35062 by electronic service through the Court's CM/ECF system and/or by placing a copy of the same in the U. S. Mail, postage prepaid this 21st day of December, 2018.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV